# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| ADRIAN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:18-cv-00647-GMN-EJY |
| vs. | ) | |
| | ) | **ORDER** |
| SGT D. HOLMS, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is Plaintiff Adrian Johnson's ("Plaintiff's")[1] Motion to Dismiss Defendants Cardenas and Pineda, (ECF No. 137). Defendants filed a Non-Opposition to Plaintiff's Motion, (ECF No. 138).

Also pending before the Court is Defendants Sergeant Daniel Holm, Sergeant Mark Binko, Ryan Heise, Charles Cullina, Michael Murphy, Oscar Cardenas, and Mark Pineda (collectively, "Defendants"), Motion for Summary Judgment, (ECF No. 139). Plaintiff filed a Response, (ECF No. 148), to which Defendants filed a Reply, (ECF No. 150). Plaintiff also filed a Surreply, (ECF No. 153).

Also pending before the Court is Defendants' Motion to Strike Untimely Disclosed Exhibits in Plaintiff's Response to the Motion for Summary Judgment, (ECF No. 149). Plaintiff filed a Response, (ECF No. 151), to which Defendants filed a Reply, (ECF No. 152).

---

[1] In light of Plaintiff's status as a *pro se* litigant, the Court has liberally construed his filings, holding them to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

1  Also pending before the Court is Defendants' Motion to Strike Plaintiff's Surreply,

2  (ECF No. 155).  Plaintiff did not file a Response.[2]

3  For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion to Dismiss,

4  **GRANTS** Defendants' Motion for Summary Judgment, **DENIES** Defendants' Motion to Strike

5  Untimely Disclosed Exhibits, and **GRANTS** Defendants' Motion to Strike Plaintiff's Surreply.

6  # I.  BACKGROUND

7  This case concerns Defendants' alleged constitutional violations while Plaintiff was a

8  pretrial detainee incarcerated at the Clark County Detention Center ("CCDC").  (*See* First

9  Amended Compl. ("FAC"), ECF No. 9).

10  On November 11, 2017, Defendant Holmes visited Plaintiff in his housing unit. (Conduct

11  Adjustment Report, Ex. I to MSJ, ECF No. 139-9).  Defendant Holmes had previously

12  responded to Plaintiff's multiple grievances, and rather than continuing the written

13  communication, he decided to visit Plaintiff in person to resolve his pending grievances. (*Id*.).

14  Due to the repetitive and argumentative nature of Plaintiff's responses, Defendant Holmes

15  instructed inmate to return to his unit. (*Id*)  Plaintiff became increasingly loud and disruptive.

16  (*Id*.).  Defendant Holmes warned Plaintiff that if he did not return to his room immediately, he

17  would be transported to disciplinary housing. (Decl. of Daniel Holm ("Holm Decl.") ¶ 13, Ex.

18  C to MSJ, ECF No. 139-3).  Plaintiff allegedly responded with something to the effect of "it is

19  what it is." (*Id*. ¶ 13).  Defendant Holmes then instructed Plaintiff to pack his belongings for

20  transport to disciplinary. (Conduct Adjustment Report at 1).  Because Plaintiff became louder

21  in his cell, Defendant Holmes instructed him to turn around and handcuffed him without

22  incident. (*Id*.).  Holmes allegedly permitted jail official to "brutalize" Plaintiff in order to place

23

24  ───────────────

25  [2] The Court grants Defendants' Motion to Strike Plaintiff's Surreply.  Local Rule 7-2 explicit prohibits "supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause." *See* Dist. Nev. L. Rule 7-2(g).  Given that the Court did not grant leave and no good cause is demonstrated, the Court strikes Plaintiff's Surreply, (ECF No. 153), and Supplement to Surreply, (ECF No. 154).

Plaintiff in a disciplinary module for mental and psychiatric inmates. (*Id*. at 6).  Defendant Binko purportedly struck Plaintiff several times in the left cheek with his fist and also smothered Plaintiff's head while Plaintiff was handcuffed in a kneeling position secured by other officers and while causing no threat to Binko. (*Id*. at 10).  Heise also allegedly pushed Plaintiff's head into a wall and pulled Plaintiff's hand far up behind Plaintiff's back while being handcuffed. (*Id*. at 12).  Garza recorded Binko and Heise allegedly brutalizing Plaintiff on a camcorder but never reported the incident. (*Id*. at 14).  Plaintiff alleges that Defendants Binko and Heise placed in him restraints for retaliation against official misconduct at CCDC. (*Id*.).

Under the instruction of Defendant Holmes, Defendant Cullina entered Plaintiff's single cell after Plaintiff's move to disciplinary and removed Plaintiff's personal property, which purportedly was distributed to other inmates. (*Id*. at 3).  Plaintiff alleges that Defendant Cullina also wrote a false property report claiming that he placed Plaintiff's belongings in the property intake. (*Id*.).

On December 16, 2017, Defendant Holmes allegedly continued to harass Plaintiff by "mocking, taunting, verbally abusing and sexual verbal abuse" towards Plaintiff. (*Id*. at 8). Plaintiff alleges that Defendant Heise refused to pick up Plaintiff's forms; however, picked up other inmates' forms. (*Id*. at 13).

On December 18, 2017, Defendant Binko purportedly threated Plaintiff with physical harm. (*Id*. at 11).  Defendant Binko allegedly told Plaintiff to "shut the fxxk up" and further threatened to hit Plaintiff if he talked. (*Id*.).

On February 15, 2018, Defendant Holmes transferred Plaintiff to Administrative Segregational Housing. (*Id*. at 5).  That day, Plaintiff witnessed Defendant Holmes mistreat Plaintiff's cellmate. (*Id*.).  Plaintiff, in response, stated that he would write a complaint regarding Defendant Holmes' alleged mistreatment of his cellmate. (*Id*.).  Defendant Holmes removed Plaintiff from his cell and placed him in a max unit. (*Id*.).

From December 28, 2017 through February 15, 2018, Plaintiff alleges that Defendant Murphy failed to intervene to stop the ongoing violations even though he knew about them through the grievance process. (*Id*. at 16).  Defendant Murphy also failed to conduct a thorough investigation or intervene. (*Id*.).

On March 22, 2019, Plaintiff filed his Amended Complaint seeking declaratory, injunctive, and monetary relief. (FAC at 16, 19).  On May 15, 2019, the Court issued its Screening Order, (ECF No. 10), indicating the following claims survived: (1) a First Amendment retaliation claim against Defendants Holmes, Cullina, Binko, Heise, and Garza; (2) a Fourteenth Amendment excessive force claim against Defendants Holmes, Binko, Heise, and Garza; (3) a Fourteenth Amendment due process property claim against Defendants Holmes and Cullina; (4) a Fourteenth Amendment denial of access to the grievance procedure claim against Defendants Holmes and Heise; and (5) a supervisory liability claim against Defendant Murphy. (Screening Order 8:10–19).  Plaintiff filed a Motion to Dismiss, which Defendants did not oppose. (*See* Pl.'s Mot. Dismiss (MTD"), ECF No. 137).  Defendants thereafter filed a Motion for Summary Judgment, (ECF No. 139).  The Court addresses each motion in turn.

## II.  __LEGAL STANDARD__

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id*.  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*,

718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is

sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id*. at 249–50.

III.   **DISCUSSION**

   A.  **Motion to Dismiss, (ECF No. 137)**

Plaintiff moves to dismiss two defendants, Defendants Cardenas and Pineda. (Pl.'s Mot. Dismiss at 1, ECF No. 137).  Defendants filed a Notice of Non-Opposition, (ECF No. 138). Given that "[t]he failure of an opposing party to file points and authorities in response to any motion . . . constitutes a consent to the granting of the motion," the Court accordingly grants

Plaintiff's Motion to Dismiss. *See* Dist. Nev. Local R. 7-2(d).  Defendants Cardenas and Pineda are accordingly dismissed from the instant cases.

**B.  Motion for Summary Judgment, (ECF No. 139)**

As explained in the Screening Order, only five of Plaintiff's claims remain: (1) First Amendment retaliation claim; (2) Fourteenth Amendment excessive force claim; (3) Fourteenth Amendment due process property claim; (4) Fourteenth Amendment denial of access to the grievance procedure claim; and (5) supervisory liability claim. (Screening Order 8:10–19). Defendants move for summary judgment.  Specifically, they dispute each of Plaintiff's claims and further argue that Defendants are otherwise entitled to qualified immunity (Def.'s Motion for Summ. J. ("MSJ") 15:2–19, ECF No. 139).  The Court first addresses Plaintiff's alleged constitutional violations.

i.    Section 1983 Claims

Section 1983 actions allege a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  To bring a successful § 1983 claim, a plaintiff must allege (1) a violation of a constitutional right and (2) must show that the alleged violation was committed by "a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).  Moreover, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393—94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)).  The Court begins by addressing Plaintiff's First Amendment Retaliation claim.

//
//
//
//

a. *First Amendment Retaliation Claim*

Plaintiff alleges that Defendants Holmes, Cullina, Binko, Heise, and Garza retaliated against him for filing grievances in violation of the First Amendment. (*See* FAC at 6, 11); (*see also* Screening Order 5:14–6:9).  Specifically, Plaintiff alleges that Defendants retaliated by conducting a cell extraction and moving him to a mental health ward, filing a false disciplinary report against him, removing his property from his cell and giving it to other inmates, threatening Plaintiff with physical harm, and putting Plaintiff in administrative segregation. (Screening Order 6:5–8).  Defendants argue that their actions were not in retaliation to Plaintiff's grievances, but rather to preserve institutional order, discipline, and security because Plaintiff disobeyed Defendant Holm's multiple orders to return to his cell. (MSJ 15:20–17:16). Furthermore, Defendants contend that Plaintiff otherwise failed to exhaust all administrative remedies as to his First Amendment retaliation claim. (Reply 12:19–13:2, ECF No. 150).

"Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). In the prison context, a claim for First Amendment retaliation under § 1983 must establish five elements: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

To satisfy the "retaliatory motive" element of a retaliation claim, a plaintiff must show that his First Amendment activity was "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)).  The evidence establishing such a motive is often circumstantial, *see id.*, but "mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).  In

1  *Barnett v. Centoni*, the Ninth Circuit affirmed the district court's dismissal of the plaintiff's

2  retaliation claim on summary judgment. *Barnett*, 31 F.3d 813, 816 (9th Cir. 1994).  There, the

3  officers introduced evidence that the plaintiff was found guilty of possessing inmate

4  manufactured alcohol by a prison disciplinary board. *Id.*  Because there was "some evidence"

5  to support the reclassification, and because the reclassification served the "legitimate

6  penological purpose of maintaining prison discipline," the Ninth Circuit affirmed dismissal of

7  the plaintiff's retaliation claim. *Id.*

8       Similarly, Defendants sufficiently provide evidence that Plaintiff's transfer to

9  disciplinary served a "legitimate penological purpose of maintaining prison discipline." *Id.*  The

10  Conduct Adjustment Board tried Plaintiff's case concerning his disciplinary transfer on

11  November 11, 2017 and ultimately found Plaintiff guilty of disrupting/disobeying a direct

12  order. (*See* Conduct Adjustment Report at 1); (*see also* Conduct Adjustment Board Hearing

13  Results at 1, Ex. K to MSJ, ECF No. 139-11).  As in *Barnett*, Defendants demonstrate with

14  some evidence that they acted because Plaintiff refused to obey a direct order from the staff.

15  *Barnett*, 31 F.3d at 816.  Plaintiff notably fails to provide additional evidence to support his

16  theory that Defendants moved him to disciplinary in retaliation for filing grievances.  Plaintiff's

17  mere speculation that there is a causal connection is not enough to raise a genuine issue of

18  material fact. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

19  Accordingly, the Court grants summary judgment to Defendants concerning Plaintiff's First

20  Amendment Retaliation claim.

21            b.  Fourteenth Amendment Excessive Force Claim

22       Plaintiff alleges that Defendants Holmes, Binko, Heise, and Garza used unreasonably

23  excessive force on Plaintiff. (*See* FAC at 6, 10, 12, 14).  Specifically, Plaintiff asserts that

24  Officers Binko and Heise punched Plaintiff and pushed his head into the wall while Plaintiff

25  was handcuffed. (*See id*. at 6, 14).  Defendants argue that the video shows that neither Officer

1   Binko nor Officer Heise used excessive force given Plaintiff's uncooperative behavior during

2   the incident. (MSJ 18:4–12).  Moreover, Defendants assert that Plaintiff's claim fails under the

3   Prison Litigation Reform Act ("PLRA") because Plaintiff failed to exhaust his administrative

4   remedies. (*Id.* 18:13–19:5).  The Court first addresses whether Plaintiff exhausted his

5   administrative remedies.

6           The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

7   with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

8   prisoner confined in any jail, prison, or other correctional facility until such administrative

9   remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement in

10  prisoner cases is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S. Ct. 2378, 165 L. Ed. 2d

11  368 (2006).  Further, the PLRA requires "proper exhaustion" of administrative remedies. *Id.* at

12  93.  Proper exhaustion "means that a grievant must use all steps the prison holds out, enabling

13  the prison to reach the merits of the issues." *Griffin v. Arpaio*, 557 F.3d 1117, 1119-20 (9th Cir.

14  2009).

15          Courts should decide exhaustion before examining the merits of a prisoner's claim.

16  *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014).  The defendant bears the initial burden to

17  show that there was an available administrative remedy, and that the prisoner did not exhaust it.

18  *Id*. at 1169, 1172.  Once that showing is made, the burden shifts to the prisoner, who must

19  either demonstrate that he, in fact, exhausted administrative remedies or "come forward with

20  evidence showing that there is something in his particular case that made the existing and

21  generally available administrative remedies effectively unavailable to him." *Id*. at 1172.  The

22  ultimate burden, however, rests with the defendant. *Id*.  Summary judgment is appropriate if the

23  undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to

24  exhaust. *Id*. at 1166, 1168; see Fed. R. Civ. P. 56(a).

25

Defendants' Motion for Summary Judgment includes a copy of the Clark County Detention Center ("CCDC") "Standard Operating Procedure" which describes the guidelines and procedures for inmates' requests and grievances against CCDC staff. (*See* Inmate Grievance SOP, Ex. B to MSJ, ECF No. 139-2).  In order for a plaintiff to exhaust available remedies, CCDC's SOP encourages the inmate to resolve informally before initiating the grievance process. (*Id*. at 1).  Inmates who cannot informally resolve the issue may file a formal Inmate Request/Grievance Form. (*Id*. at 2).  If the officer cannot resolve the issue, the grievance will be forwarded "through the chain of command for resolution." (*Id*.).  "The final step in resolution is the Deputy Chief, Detention Services Division ("DSD")." (*Id*.).

Here, the record is devoid of evidence showing that Plaintiff filed any grievances regarding excessive use of force by Defendants Holmes, Binko, Heise, and Garza.  Indeed, as Defendants concisely summarize in their Reply, Plaintiff filed grievances for many other issues, including complaints about missing items, the grievance procedure, officers' attempts to retaliate against him. (Reply 5:6–6:13).  None of these grievances, however, discuss Plaintiff's alleged Fourteenth Amendment claim of excessive force. (*See* Inmate Request/Grievance filed on September 25, 2017) (reporting unfair punishment and violations of health and safety procedures); (*see* Inmate Request/Grievance filed on September 29, 2017) (arguing that the officers retaliated against Plaintiff for filing grievances); (*see* Inmate Request/Grievance filed on October 15, 2017) (complaining about inhumane treatment).  Accordingly, the Court finds that Plaintiff failed to exhaust his administrative remedies and grants summary judgment in favor of Defendants as to the Fourteenth Amendment excessive force claim.

### c.  Fourteenth Amendment Due Process Property Claim

Plaintiff alleges that Defendants Holmes and Cullina took Plaintiff's property during Plaintiff's transport to disciplinary housing. (FAC at 7).  Specifically, Plaintiff claims that Defendants Holmes and Cullina took his commissary items and important legal documentation.

1    (*Id*. at 15).  Defendants argue, in response, that Defendants Holmes and Cullina replaced

2    Plaintiff's missing commissary and returned his other property. (MSJ 19:13–20:14).  Because

3    Defendants remedied the alleged deprivation of property, Defendants assert that they did not

4    violate Plaintiff's due process rights under the Fourteenth Amendment. (*Id*.).

5          As to Plaintiff's commissary items, Defendants did not violate Plaintiff's due process

6    rights because Defendants replaced his lost items.  "[A]n unauthorized intentional deprivation

7    of property by a state employee does not constitute a violation of the procedural requirements

8    of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation

9    remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S. Ct. 3194, 3204

10   (1984).  The rule in *Hudson* only applies, however, when the deprivation occurred in a "random

11   and unauthorized manner" and not as a result of "some established state procedure." *Quick v.*

12   *Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981).

13         Here, Defendant's escort is not an "established state procedure" that destroyed Plaintiff's

14   property interest, by operation of law. *C.f. Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436,

15   102 S. Ct. 1148, 1158 (1982) (finding that the deprivation there occurred as a result of a "state

16   system . . . that destroy[ed] a complainant's property interest, by operation of law, whenever

17   the Commission fail[ed] to convene a timely conference).  Defendants' replacement of his

18   goods thus remedied the alleged due process property violation. *Hudson*, 468 U.S. at 533.

19   ("For intentional, as for negligent deprivations of property by state employees, the state's action

20   is not complete until and unless it provides or refuses to provide a suitable postdeprivation

21   remedy.").  Indeed, Defendant Holm testified that he ultimately replaced his items, namely one

22   honeybun, one hot spicy chips, one chicken ramen, one chili ramen, six chili lime shrimp, three

23   beef ramen, and one Baby Ruth. (*See* Decl. of Daniel Holm ("Holm Decl." ¶ 32, Ex. C to MSJ,

24   ECF No. 139-3) ("Because we lost his property, his entire last order was replaced and placed in

25   his property locker.").

As to Plaintiff's personal belongings, Defendants did not lose his property, but rather, placed his property in his designated property locker, pursuant to CCDC policy. (*See id.* ¶ 33). Indeed, Plaintiff knew his property was temporarily held in his locker, as he requested some items in his locker on several occasions. (*See* Property Transaction Receipts, Ex. R to MSJ, ECF No. 139-18). Plaintiff additionally fails to provide sufficient facts to support his bare allegations that Defendants distributed his property to other inmates and then filed a false Property Transaction Receipt to cover their tracks. (*See* Pl.'s Resp. to MSJ 20:18–22).

In sum, Defendants did not violate Plaintiff's due process property rights under the Fourteenth Amendment because Defendants did not lose Plaintiff's property and otherwise remedied the lost property. Accordingly, the Court grants summary judgment in Defendants' favor.

### d. Fourteenth Amendment Denial of Access Claim

Plaintiff alleges that Defendants Holmes and Heise tried to prevent Plaintiff from turning in his grievances, verbally threatening Plaintiff that they would not pick-up his grievances, and refusing to pick up Plaintiff's grievances at his cell door. (FAC at 8, 13). Defendants claim that Defendants Holmes and Heise did not block Plaintiff from filing grievances. (MSJ 20:15–21:7). Plaintiff, they assert, is not entitled to a specific prison grievance procedure. (*Id.*).

Courts have long held that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 1494 (1977). "The right of meaningful access to the courts extends to established prison grievance procedures." *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir. 1995). To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered "actual injury," a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Lewis v. Casey*, 518 U.S. 343, 349, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). An "actual injury" is "actual prejudice with

respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id*. at 348.  The actual-injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Id*. at 353.

Here, Plaintiff fails to provide any evidence that Defendant Holmes and Heise blocked his access to CCDC's grievance process.  Plaintiff's multiple grievances demonstrate the opposite—that Plaintiff knew about the grievance process and availed himself to the process several times by submitting grievances through CCDC's formal policy. (Reply 5:6–6:13). Plaintiff also does not provide any facts to support his allegation that Defendants Holmes and Heise verbally threatened Plaintiff.  Because no genuine dispute of material fact exists, the Court accordingly grants summary judgment to Defendants as to Plaintiff's Fourteenth Amendment Denial of Access claim.

e.  Supervisory Liability Claim

Plaintiff lastly alleges that Defendant Murphy is liable as a supervisor for failing to intervene in the other alleged constitutional violations. (FAC at 16).  Defendants argue that Plaintiff failed to show any constitutional violations. (MSJ 21:8–22:2).  Even if there was a constitutional violation, Defendants assert that summary judgment is proper because Plaintiff cannot demonstrate that Defendant Murphy approved the other officers' decisions. (*Id*. 22:3–8).

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant.  A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no *respondeat superior* liability under [§] 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

through the official's own individual actions, has violated the Constitution."); *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1182 (9th Cir. 2007) (concluding that allegations that school officials knew of alleged violation and failed to take corrective action were sufficient to state a claim); *Ortez v. Washington Cty, Or.*, 88 F.3d 804, 809 (9th Cir. 1996) (concluding proper to dismiss where no allegations of knowledge of or participation in alleged violation).

Here, Defendant Murphy cannot be liable as a supervisor because Defendants did not violate Plaintiff's constitutional rights, as discussed *infra*. Plaintiff's supervisory liability claim fails on this ground alone. For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment.

### C. Motions to Strike Untimely Disclosed Exhibits, (ECF No. 149)

Defendants request the Court strike Plaintiff's exhibits attached to his Response to Defendants' Motion for Summary Judgment. (*See* Mot. Strike, ECF No. 149). As a preliminary matter, the Court notes that Defendants' Motion to Strike is actually a motion for discovery sanctions under Rule 37(c)(1). (See Defs' Mot. Strike 3:18–5:12). "Under Rule 12(f), a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter." *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, Case No. 2:12-CV-00560-MMD, 2014 WL 1305144, at *6 (D. Nev. Mar. 31, 2014). "Motions to strike apply only to pleadings, and courts are generally unwilling to construe the rule broadly and refuse to strike motions, briefs, objections, affidavits, or exhibits attached thereto." *Id.* (citation omitted) (denying motion to strike declarations submitted in support of summary judgment motions). Nevertheless, the Court has "inherent power to strike a party's submissions other than pleadings." *Mazzeo v. Gibbons,* No. 2:08-CV-01387-RLH-PA, 2010 WL 3910072, at *3 (D. Nev. Sept. 30, 2010). The Court thus broadly construes Defendants' Motion to Strike as a motion for discovery sanctions pursuant to Rule 37(c)(1). *See also Carisbrook Asset Holding Tr. v. SFR Investments*

*Pool 1, LLC*, No. 3:17-CV-00370-MMD-WGC, 2019 WL 2393614, at *2 (D. Nev. June 6, 2019).

Federal Rule of Civil Procedure 26(a)(1) governs initial disclosures. *See* Fed. R. Civ. P. 26(a).  Rule 26(a)(1)(A)(i) requires parties to disclose the name of "each individual . . . that the disclosing party may use to support its claims or defenses" at the outset of a civil suit.  Similarly, Rule 26(a)(1)(A)(ii) requires parties to disclose "a copy . . . of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses."  "Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Office Superstore*, LLC, 644 F.3d 817, 827 (9th Cir. 2011) (quoting *Yeti by Molly, Ltd.*, 259 F.3d at 1106); Fed. R. Civ. P. 37(c)(1).  Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for disclosure. *Yeti by Molly, Ltd.*, 259 F.3d at 1106 (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)).  "The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless." *Goodman*, 644 F.3d at 827; Fed. R. Civ. P. 37(c)(1).

Here, Plaintiff's newly attached exhibits to his Response to Defendants' Motion for Summary Judgment are harmless.  Defendants utilize Plaintiff's exhibits to advance alternative theories in their Reply.  For example, Defendants argue that Plaintiff failed to exhaust all of his administrative remedies as to his retaliation claim. (*See* Reply 3:3–6:19).  Given that Defendants had an opportunity to respond to Plaintiff's newly-attached exhibits and the Court ultimately dismissed Plaintiff's excessive force claim based on such evidence, the Court finds that Plaintiff's failure to disclosure the exhibits did not harm Defendants.  Defendants' Motion to Strike is therefore denied.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss Defendants Cardenas and Pineda, (ECF No. 137), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 139), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Untimely Disclosed Exhibits, (ECF No. 149), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Surreply, (ECF No. 155), is **GRANTED**.

The Clerk of Court is ordered to close the case accordingly.

**DATED** this ___20___ day of September, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT