**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ADRIAN JOHNSON,           )
                          )
          Plaintiff,     )  Case No.: 2:18-cv-00647-GMN-EJY
   vs.                    )
                          )  **ORDER GRANTING IN PART AND**
SERGEANT DANIEL HOLM, *et al.*,  )  **DENYING IN PART MOTION FOR**
                          )  **SUMMARY JUDGMENT**
          Defendants.    )
                          )

Pending before the Court is the Motion for Summary Judgment, (ECF No. 169), filed by Defendants Sergeant Daniel Holm, Sergeant Mark Binko, Ryan Heise, Charles Cullina, and Michael Murphy. Plaintiff Adrian Johnson filed a Response, (ECF No. 179),[1] to which Defendants filed a Reply, (ECF No. 181).

For the reasons set forth below, the Court **GRANTS in part and DENIES in part** the Motion for Summary Judgment.

**I.   BACKGROUND**

This case concerns Defendants' alleged constitutional violations while Plaintiff was a pretrial detainee at the Clark County Detention Center ("CCDC"). (*See* Am. Compl., ECF No. 9). Plaintiff and Defendant Sgt. Holm were communicating via written grievances and Sgt. Holm's written responses when Sgt. Holm decided to meet with Plaintiff in person to see if he could resolve Plaintiff's issues.[2] (Holm Decl. ¶ 4, Ex. C to Mot. Summ. J., ECF No. 169-3).

---

[1] Plaintiff raises two extraneous arguments in his Response. First, Plaintiff argues that Defendants have intentionally withheld discovery. (Resp. 30:7–28). Discovery in this case is now closed, and the Court will not reopen discovery at this stage in the litigation. Second, Plaintiff argues that Defendants' Motion is untimely. The Court set a May 5, 2023, deadline for renewed motions for summary judgment in light of the Ninth Circuit's memorandum decision. (Min. Order, ECF No. 167). Defendants timely filed their Motion on May 5, 2023.

[2] Plaintiff had complained in the past that officers were not accepting grievances he left hanging out of his door. (Holm Decl. ¶ 7). Numerous officers had explained to him that officers do not accept grievances hanging out of cell doors. (*Id.* ¶ 9).

Sgt. Holm requested Plaintiff to visit him at the officers' desk in the day room. (*Id.* ¶ 5). Sgt. Holm eventually told Plaintiff to return to his cell. (*Id.* ¶ 10). The Conduct Adjustment Report ("CAR") indicates that Plaintiff eventually obeyed the order to walk back to his cell, albeit slowly and while talking. (Mem. Dec. at 3, ECF No. 166). Because Plaintiff continued being loud and disruptive, Sgt. Holm instructed Plaintiff to pack his belongings for transport to disciplinary. (CAR, Ex. I to Mot. Summ. J., ECF No. 169-9).

The parties do not dispute that Plaintiff was handcuffed, placed in a restraint chair, and strip searched, but their accounts differ when it comes to the amount of force used and Plaintiff's compliance. Plaintiff's verified Complaint alleges that an officer struck Plaintiff with a closed fist on the left side of his cheek and applied unnecessary force to the back of Plaintiff's head as if to smother him while he was handcuffed and in a kneeling position. (Am. Compl. at 10, ECF No. 9). Plaintiff also avers that an officer pushed his head into a wall and pulled his hand up behind his back while being handcuffed. (*Id.* at 12).

Video footage of the incident shows officers restraining Plaintiff in a restraint chair, transporting him, and strip searching him in another cell. (Restraining Chair Video, Ex. F to Mot. Summ. J., ECF No. 140).[3] One officer held Plaintiff's head, and Plaintiff screamed, "why are you pushing down on my neck." (*Id.*). Throughout the video, Plaintiff said he did not resist officers. (*Id.*). When they arrived in another cell, the officers asked Plaintiff to cooperate with a strip search, and Plaintiff refused. (*Id.*). The officers then conducted a strip search, during which they forced Plaintiff onto a mattress in the cell. (*Id.*). The video footage does not show any officer striking Plaintiff. (*Id.*). Plaintiff nonetheless exclaims in the video that he is bleeding from the mouth as a result of being hit. (*Id.*).

///

---

[3] The manual filing of Exhibit F to the instant Motion does not appear to be the correct video. The Court therefore cites Ex. F filed with the preceding motion for summary judgment.

1    Following the incident, Officer Cullina wrote the CAR, which describes the events
2 leading up to and including the alleged excessive force incident. (CAR, Ex. I to Mot. Summ.
3 J.).  Plaintiff made several grievances following the incident complaining of officer
4 misconduct, missing commissary, and missing legal items. (Holm Decl. ¶ 34).
5    The Court previously granted summary judgment for Defendants on all claims. (Order,
6 ECF No. 161).  Plaintiff appealed, and the Ninth Circuit affirmed in part, reversed in part, and
7 remanded. (Mem. Dec.).  Specifically, the Ninth Circuit affirmed this Court's grant of summary
8 judgment on Plaintiff's due process and access-to-courts claims. (*Id.* at 2).  The Circuit reversed
9 this Court's decision regarding Plaintiff's retaliation claim because Plaintiff raised a triable
10 dispute of material fact as to whether his grievances and related protected speech were a
11 substantial motivating factor for Defendants' actions and whether those actions reasonably
12 advanced a legitimate penological purpose. (*Id.* at 3).  The Circuit also reversed this Court's
13 decision regarding Plaintiff's excessive force claim because Plaintiff sufficiently raised this
14 claim in his grievances and remanded for this Court to consider in the first instance whether
15 Plaintiff exhausted his excessive force claim or whether administrative remedies were
16 effectively unavailable to him. (*Id.* at 4).  Lastly, the Circuit reversed this Court's decision
17 regarding Plaintiff's supervisory liability claim. (*Id.*).  The Circuit further noted that on remand,
18 this Court can consider the issue of qualified immunity in the first instance. (*Id.* at 5).

19 **II.    LEGAL STANDARD**

20    The Federal Rules of Civil Procedure provide for summary adjudication when the
21 pleadings, depositions, answers to interrogatories, and admissions on file, together with the
22 affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant
23 is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that
24 may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
25 A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to

return a verdict for the nonmoving party. *Id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   DISCUSSION**

Defendants move for summary judgment on Plaintiff's claims for excessive force, retaliation, and supervisory liability. Defendants argue that they are entitled to qualified immunity on all claims, and additionally, Plaintiff failed to exhaust his administrative remedies for his excessive force claim. Because the Court finds that Defendants are entitled to qualified

immunity on Plaintiff's excessive force claim, the Court does not address whether Plaintiff exhausted his administrative remedies for that claim.

### A. Qualified Immunity

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.  When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'").  Thus, to overcome a claim of immunity, plaintiffs must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735.

Although qualified immunity is a defense raised by the defendant, "[i]t is the plaintiff who 'bears the burden of showing that the rights allegedly violated were clearly established.'" *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000)).  A right is "clearly established" when "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (cleaned up).  The Supreme Court has "'repeatedly told courts . . . not to define clearly established law at a high level of generality,' since doing so avoids the crucial question [of] whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (quoting *al-Kidd*, 563 U.S. at 742) (internal citation omitted).  Defeating a qualified immunity claim on summary judgment does not require a case directly on point, but "existing

precedent must have placed the statutory or constitutional question beyond debate" for a right to be clearly established. *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

### 1. Retaliation

An inmate's First Amendment retaliation claim entails five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Here, the Ninth Circuit concluded that Plaintiff raised a triable dispute as to whether his grievances and related protected speech were a substantial motivating factor for Defendants' actions and whether those actions reasonably advanced a legitimate penological purpose. (Mem. Dec. at 3). Specifically, the Ninth Circuit noted that "the CAR indicates that Johnson was obeying the order to walk back to his cell, albeit slowly and while talking." (*Id.*). The Circuit further explained that Plaintiff's verified Complaint alleged that Defendants "took disproportionate actions in response to his conduct, including by conducting a cell extraction and moving him to a mental health ward, filing a false disciplinary report against him, removing his property from his cell and giving it to other inmates, threatening him with physical harm, and putting him in administrative segregation." (*Id.*).

At summary judgment, courts "evaluate an assertion of qualified immunity 'by assuming that the version of the material facts asserted by the non-moving party is correct.'" *Waid v. Cnty. of Lyon*, 87 F.4th 383, 388 (9th Cir. 2023); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (noting that where genuine issues of material fact exist regarding the alleged constitutional violation, "summary judgment is appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-moving party"). Thus, in light

of the dispute of fact confirmed by the Ninth Circuit, this Court assumes that Plaintiff's version of the facts is true. That is, the Court assumes that Plaintiff's grievances and related protected speech were a substantial motivating factor for Defendants' actions and that those actions did not reasonably advance a legitimate penological purpose when considering qualified immunity at summary judgment. Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has pled facts showing that Defendants violated his constitutional right to free speech and to not be retaliated against, satisfying the first prong to defeat qualified immunity.

The Court now turns to whether this right was clearly established. Plaintiff correctly notes that he has a First Amendment right to redress grievances through the jail's administrative procedures and claims this right is clearly established. (Resp. 28:14–18); *see Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005) (quoting *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (reiterating this Circuit's "firm recognition that 'the prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes.'"). The Court notes that Plaintiff did not cite any controlling case law from this Circuit explaining that the prohibition against retaliatory punishment is clearly established law. Liberally construing his *pro se* filings, however, the Court finds that Plaintiff's general assertions regarding this clearly established law sufficient to meet his burden. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Defendants argue that (1) it is not clearly established law that Plaintiff could argue and disobey orders without being disciplined; (2) there is no case law suggesting that sending an inmate to disciplinary housing for breaking rules did not reasonably advance a legitimate correctional goal, (3) there is no clearly established precedent which holds that officers retaliated against an inmate for submitting grievances where the inmate fails to present circumstantial evidence of the officers' motive, and (4) there is no clearly established law suggesting that an officers' multiple responses to an inmate's grievances evidenced a retaliatory

motive against the inmate filing grievances or the content of his grievances. (Mot. Summ. J. 25:2–27:8). But these arguments challenge the Ninth Circuit's conclusion that Plaintiff raised a triable dispute as to whether his grievances and related protected speech were a substantial motivating factor for Defendants' actions and whether those actions reasonably advanced a legitimate penological purpose. Because these facts are disputed, the Court assumes Plaintiff's version of the facts is true; thus, the Court will not entertain arguments at this stage regarding Defendants' motive or penological purpose. The Court therefore DENIES summary judgment on Defendants' claim for qualified immunity on Plaintiff's retaliation claim.

### 2. Excessive Force

When a jail official is accused of using excessive physical force in violation of the Fourteenth Amendment, the question turns on whether the defendant's use of force was purposeful and knowing, and whether the force purposely or knowingly used against the pretrial detainee was objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). The standard considers whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, regardless of the officer's underlying intent or motive. *Id.* at 396. Courts must balance the state's interest in maintaining order and defer to practices needed to preserve order and discipline in the judgment of the officials. *Id.* at 397. In determining whether the use of force was excessive, the court may consider factors such as "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

The Court notes at the outset that Plaintiff's verified Complaint may be considered as evidence because it is based on personal knowledge and sets forth specific facts admissible in evidence. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995). But Defendants have

produced video evidence directly contradicting the facts alleged in Plaintiff's verified Complaint. (Restraining Chair Video, Ex. F to Mot. Summ. J.). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In determining whether Defendants are entitled to qualified immunity on Plaintiff's excessive force claim, the Court will not ignore the sequence of events captured on video simply because Plaintiff's verified Complaint sets forth a different sequence of events. Thus, the Court evaluates whether Defendants are entitled to qualified immunity based on the version of facts presented in the video. *See Scott*, 550 U.S. at 380–381 (noting that court should have viewed facts in the light depicted by videotape).

Based on the video evidence, the Court finds that Defendants did not use excessive force. Although Plaintiff complains of an injury to his mouth, the video does not at any point show an officer hitting Plaintiff. Rather, the video depicts officers using some force to restrain and strip search a pretrial detainee that is actively refusing to comply with orders, despite Plaintiff's exclamations that he was and is following orders. The officers appear to use objectively reasonable force necessary to restrain and search Plaintiff, belying Plaintiff's allegations that Defendants violated a statutory or constitutional right. Because Plaintiff cannot meet the first prong required to defeat qualified immunity, Defendants are entitled to qualified immunity on this ground alone. *al-Kidd*, 563 U.S. at 735.

Even if the amount of force depicted in the video could be construed as excessive, Defendants are still entitled to qualified immunity on this claim because there is no "case where an officer acting under similar circumstances" violated an inmate or pretrial detainee's rights. *White*, 580 U.S. at 79. Indeed, the Ninth Circuit has found that officers in similar situations did not use excessive force. *See, e.g.*, *Brown v. Trejo*, 818 F. App'x 599, 602 (9th Cir. 2020) ("It

was reasonable for jail officers to place him in hand cuffs and a waist chain when moving him within the jail."); *Rickman v. Avaniti*, 854 F.2d 327, 328 (9th Cir. 1988) (noting that routine visual body cavity searches are reasonable when inmates are moved to segregated units); *Michenfelder v. Sumner*, 860 F.2d 328, 334–36 (9th Cir. 1998) (upholding threatened use of a taser by prison officials as a means to ensure compliance with a search).

Plaintiff does not offer case law suggesting that Defendants violated a clearly established right. Plaintiff correctly notes that officials cannot punish pretrial detainees, (Resp. 28:4–5), but Plaintiff fails to cite any cases in which actions similar to those taken by Defendants here were found to be unreasonable or to amount to unlawful punishment. Even though pretrial detainees cannot be punished, jail officials may still use force when necessary. *See Kingsley*, 576 U.S. at 400–01. The Court GRANTS summary judgment for Defendants on the excessive force claim because Defendants are entitled to qualified immunity.

**3. Supervisory Liability**

Plaintiff states a supervisory liability claim against Defendant Lt. Murphy based on Murphy's failure to prevent the other Defendants' alleged constitutional violations. (Screening Order 7:21–8:6, ECF No. 10). "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

Plaintiff does not allege that Murphy was personally involved in the alleged retaliation or excessive force. Indeed, Plaintiff's verified Complaint alleges that Murphy's actions or inactions all took place after the alleged excessive force incident. (Am. Compl. at 16). Specifically, Plaintiff alleges that Murphy failed to intervene despite Plaintiff's grievances, which Murphy spoke to Plaintiff about. (*Id.*). Defendants argue that Murphy could not have set in motion the other Officers' actions if Murphy's involvement did not begin until after those

actions occurred. (Mot. Summ. J. 29:1–10).  Moreover, because the Court granted summary judgment for Defendants on the excessive force claim, Murphy cannot be liable as a supervisor as to that claim. *See Doe v. City of San Diego*, 35 F. Supp. 3d 1214, 1226 (S.D. Cal. 2014) (noting that "plaintiff must establish that the subordinate committed a violation of a constitutional right, and that the violation is attributable to the personal conduct of the supervisory defendant").

Nonetheless, Plaintiff alleges that Defendants' retaliatory actions persisted after the alleged excessive force incident, at which time Murphy could have intervened. (Am. Compl. at 16).  Even so, Plaintiff has not presented any clearly established law indicating that Murphy could be liable for other officers' actions simply by discussing the grievance process with Plaintiff.  Because Plaintiff's basis for his supervisory liability claim against Murphy rests on his failure to remedy Plaintiff's grievances—which Murphy discussed with Plaintiff—the Court GRANTS summary judgment for Murphy on the supervisory liability claim.

**4.  Officer Cullina**

Defendants argue that Officer Cullina is entitled to qualified immunity on separate grounds from the other officers. (Mot. Summ. J. 27:18–28:9).  Because the Court grants summary judgment for all Defendants on the excessive force claim, the Court need only consider these separate grounds as to the retaliation claim.

Defendants argue that Cullina is entitled to qualified immunity on the retaliation claim because "all Cullina did was author the conduct adjustment report describing the charges against Johnson for disrupting the module and disobeying a direct order." (Mot. Summ. J. 28:4–6).  In response, Plaintiff argues that a "reasonable fact finder could easily infer that Cullina conspired with Holm to corroborate his creation of the events of the incident to cover-up the illegal misconduct of his colleagues." (Resp. 29:10–12).  But Plaintiff does not identify any alleged inaccuracies in the report.  Furthermore, the Court agrees with Defendants that

Plaintiff "has provided no evidence Cullina had any retaliatory motive in writing the report and there is no case law clearly suggesting that an officer in Cullina's position would be liable for retaliation for reporting an inmate's disruption and disobedience to an officer's order." (Mot. Summ. J. 28:6–9).  The Court therefore finds that Officer Cullina is entitled to qualified immunity on the retaliation claim.  This finding is not inconsistent with the Ninth Circuit's conclusion that Plaintiff raised a triable dispute of fact regarding his retaliation claim because the Ninth Circuit did not address the specific facts alleged against Cullina.  The Court GRANTS summary judgment for Officer Cullina.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 169), is **GRANTED in part and DENIED in part.**  The Court GRANTS summary judgment for Defendants on the excessive force claim and supervisory liability claim.  The Court GRANTS summary judgment for Officer Cullina only on the retaliation claim.  The Court DENIES summary judgment on the retaliation claim for all other Defendants.

**IT IS FURTHER ORDERED** that the parties will have thirty days from the date of this Order to file a jointly proposed pretrial order pursuant to LR 16-3(b) using the form provided in LR 16-4.

**DATED** this  29  day of March, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court